IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  1:19-cv-24649-DPG

GATOR COASTAL SHOPPING CENTRE, LLC

       Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY,
et al.,

       Defendants.

_____/

**DEFENDANTS', ZURICH AMERICAN INSURANCE COMPANY; IRONSHORE SPECIALTY INS. CO.; LIBERTY MUTUAL FIRE INS. CO.; ALLIED WORLD ASSURANCE COMPANY, LTD.; HAMILTON RE, LTD.; ACE'S AMERICAN INSURANCE COMPANY; WESTPORT INSURANCE CORPORATION; ASPEN SPECIALTY INS. CO.; TOKIO MARINE AMERICA INS. CO.; STARR SURPLUS LINES INS. CO.; AIG EUROPE LIMITED; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NUMBER PTNAM1801122; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802912; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802913; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802914; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. BNPD18AA158Z; and UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. 042768061812, MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, OR, IN THE ALTERNATIVE, FOR FAILURE TO STATE A CAUSE OF ACTION UNDER CONTRACT, FOR FAILURE TO STATE A CAUSE OF ACTION FOR DECLARATORY RELIEF, FOR FAILURE TO JOIN AN INDISPENSABLE PARTY, AND FOR IMPROPER VENUE AND SUPPORTING MEMORANDUM OF LAW**

      COMES NOW Defendants, ZURICH AMERICAN INSURANCE COMPANY; IRONSHORE SPECIALTY INS. CO.; LIBERTY MUTUAL FIRE INS. CO.; ALLIED WORLD ASSURANCE COMPANY, LTD.; HAMILTON RE, LTD.; ACE'S AMERICAN INSURANCE COMPANY; WESTPORT INSURANCE CORPORATION; ASPEN

SPECIALTY INS. CO.; TOKIO MARINE AMERICA INS. CO.; STARR SURPLUS LINES INS. CO.; AIG EUROPE LIMITED; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NUMBER PTNAM1801122; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802912; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802913; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802914; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. BNPD18AA158Z; and UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. 042768061812 ("Defendants"), by and through their undersigned counsel, and pursuant to the Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), 12(b)(6), 12(b)(7) and 19, Local Rule 7.1, and 28 U.S.C. § 1332, and hereby move to dismiss Plaintiff's Amended Complaint for breach of contract and declaratory judgment, and states as follows:

**Summary of the argument**

The Amended Complaint must be dismissed because the Court does not have subject matter jurisdiction. Plaintiff has failed to show the amount in controversy is met as to each of the severally liable Defendants and as to each constituent Name of the Lloyd's syndicates named as Defendants. Additionally, Plaintiff has failed to demonstrate that all individual Names or Members of the Lloyd's syndicates are diverse from all parties. (ECF 62-1, p. 6).

Alternatively, if this Court finds it has jurisdiction over the case, the Amended Complaint is still due to be dismissed for failure to state a cause of action, for failure to join an indispensable party, and for improper venue.

The Amended Complaint fails to state a cause of action as to Defendants because Gator Coastal has no interest in the subject policies, nor has it any right to make claim on the proceeds from the policies. Under Illinois law, which applies here, an "action on an insurance policy should be brought in the name of the person having a legal interest in the subject matter of the action," i.e., the insurer or the person for whose benefit the insurance contract was made. 22A Ill.

2

Law and Prac. *Insurance* § 487.[1]  Under the policies at issue here, a loss is payable to Sears Holdings Corporation ("Sears") or as directed by the Sears. The policies do not name Gator Coastal, and do not, as required by Illinois law, contain a strong presumption, let alone any express declaration, that the policies were entered into for the direct (and not incidental) benefit of Gator Coastal. The insurance contracts do not show any intention that they were entered into to directly benefit Gator Coastal. Thus, Gator Coastal has no direct interest in the insurance contracts with Sears and it cannot make a claim on the proceeds of the policies.

Moreover, the Certificate of Insurance attached to Plaintiff's Amended Complaint expressly conditions coverage on the terms of the Lease. The Lease only addresses the procurement of "fire insurance"; there is no requirement to procure coverage for Named Windstorm.   Plaintiff's damages result from a Named Windstorm and neither the Kmart lease nor the Certificate of Insurance required Defendants to provide for all-risk or named windstorm coverage in the first instance.  (ECF 62-2, pp. 14-15.)  Getting past the labels and conclusions set forth in the Amended Complaint, the contents of the Lease and Certificate of Insurance do not support Plaintiff's claims or causes of action and, as such, Plaintiff's action must be dismissed.

---

[1] The interpretation of the insurance contracts that form the basis of Defendants' alternative motion to dismiss for lack of subject matter jurisdiction should be addressed pursuant to Illinois law, where the applicable insurance contracts were formed. In Illinois, an express choice of law clause in an insurance policy would determine which state's law to apply. *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill. 2d 520, 655 N.E.2d 842, 845, 211 Ill. Dec. 459 (Ill. 1995). Lacking that, the following factors are controlling: "location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Id.* The *Lapham-Hickey* Court found that Illinois law applied in that case because the policy was delivered in Illinois, the plaintiff was an Illinois corporation and the defendant insurance company was licensed to do business in Illinois. *Id. See Knoll Pharm. Co. v. Auto. Ins. Co.*, 152 F. Supp. 2d 1026, 1032 (N.D. Ill. 2001). In contrast, Florida applies the *lex loci contractus* choice-of-law rule to determine the law governing an insurance contract. *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006)). Pursuant to this rule, "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Id.* "When the contract deals with an insurance policy, the *locus contractus* is generally the state where the insured executed the insurance application." *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1060 (11th Cir. 2007). The delivery of the policy can constitute the "last act" necessary to execute a contract. *See, e.g., Bloch v. Berkshire Ins. Co.,* 585 So. 2d 1137, 1138 (Fla. 3d DCA 1991). *See* AIG Premier Ins. Co. v. RLI Ins. Co., 812 F. Supp. 2d 1315, 1319 (M.D. Fla. September 14, 2011)  Here, the Insured – Sears – is in Illinois.

Assuming, *arguendo*, that Plaintiff is a Named Insured – which they are not – the Amended Complaint still fails to state a cause of action because the claimed loss does not exceed the Policies' applicable deductibles.  All Defendants' policies contain a significant deductible of 5% of the value of the location at the time when the Named Windstorm occurs and, an additional $10,000,000 non-stock deductible.  Plaintiff's claim is for approximately $4,000,000 - well below the Policies' applicable deductibles.  Despite the fact that Plaintiff claims named insured/loss payee status, it simultaneously seeks to avoid application of deductibles imposed by the very Policies under which recovery is sought.  The Lease under which Plaintiff seeks recovery, the Certificate of Insurance and the Policies of insurance negate Plaintiff's contention that they are relieved of the deductibles applicable to Plaintiff's claim. Plaintiff's Amended Complaint fails to state a cause of action because the loss falls well below the policies' applicable deductibles.  Consequently, no liability exists under Defendants' Policies and Plaintiff's claims against them must be dismissed as a matter of law.

Moreover, Counts II, IV, VI, VIII, X, XII, XIV, XVI, XVIII, XX, XXII, XXIV, XXVI, XXVIII, XXX, XXXII and XXXIV of Plaintiff's Amended Complaint (the "Declaratory Judgment Counts") broadly state that there is an actual controversy between the parties requiring a declaration of the Court under 28. U.S.C §§ 2201 et seq. However, no mention is made of any specific facts that would require an interpretation with respect to an ambiguity within the policies, or any policy language, that requires or justifies the court's interpretation for declaratory relief. In sum, Plaintiff is merely seeking an improper advisory opinion as to whether a breach of contract can be maintained against the Defendants.

Additionally, Defendants Allied World Assurance Company, Ltd. and Hamilton Re seek to dismiss all claims as against them due to failure effectuate service of process (FRCP 12(b)(4)) and, once cured, to compel arbitration as against them pursuant to  FRCP 12(b)(1).  Service of process has not been effectuated as to Allied World Assurance Company, Ltd and Hamilton Re - service which requires Plaintiff to commence legal proceedings pursuant to the terms and conditions of their respective policies which has not been done here.   If the Court deems that service has been effectuated, the arbitration clauses in the Allied World Assurance Company Ltd. and Hamilton Re's policies must respectfully be compelled.  Plaintiff claims to be an insured under defendant's policies.   As a purported insured, Plaintiff would be bound by the terms and

4

6595097.1

conditions found within the policies.   The Allied World Assurance Company Ltd. policy contains a Bermuda Arbitration and Choice of Law Clause endorsement, which expressly dictates any and all disputes "relating to the Policy shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act 1993…"  (*See*, the Allied World Assurance Company Ltd policy annexed hereto as Exhibit "B".  For the court's convenience, the subject Bermuda Arbitration and Choice of Law Clausen Endorsement as contained within the Allied World policy is annexed hereto as Exhibit "C".)  The Hamilton Re policy contains a London Arbitration provision, which expressly states that any dispute, controversy or claim shall be final and fully determined in London, England under the provisions of the Arbitration Act 1996.   (*See*, the Hamilton Re policy annexed hereto as Exhibit "D".  For the court's convenience, the subject London Arbitration clause as is contained within the Hamilton Re policy is annexed hereto as Exhibit "E".)   The Plaintiff's Complaint should be dismissed as against Allied World Assurance Company, Ltd and Hamilton Re due to the failure to effectuate service on them.   And, even if service of process was effectuated - which is disputed - the Bermuda and London arbitration clauses warrant dismissal of the action as against Allied World and Hamilton Re.   Moreover, Allied World Assurance Company, Ltd and Hamilton Re expressly seek to compel arbitration - pursuant to FRCP Rule 12(b)(1) as outlined in their respective policies once service has been effectuated.

The Amended Complaint must also be dismissed for failure to join an indispensable party, Sears, which cannot be joined to this suit. Gator Coastal claims its losses total $4 million. Gator Coastal has alleged that its tenant, Kmart Corporation ("Kmart"), whose parent company is Sears, was responsible for providing insurance for Gator Coastal. Assuming the truth of this allegation, the policies require all payment to be made to Sears and that Sears determines how much to provide to third parties. The policies state as follows: "Loss, if any, shall be adjusted with and payable to Sears Holdings Corporation or as directed by it." (Ex. 1 at 34, ¶ 53; Ex. 2 at 37, ¶ 53) Given these facts, Sears is an indispensable party and without it, complete relief cannot be accorded the parties because the Court cannot fully enforce the deductible provisions of the contract that protect the insurers. Sears cannot be feasibly joined to these proceedings because it is the debtor in a Chapter 11 bankruptcy proceeding in the Southern District of New York.  *In Re*

*Sears Holdings Corporation, et. al.*, No. 18-23538 (RDD) (S.D.N.Y.). [2]  Moreover, Plaintiff claims to be relieved of the applicable deductibles.  Pursuant to the express terms of all Policies, this can only occur whenever lease conditions require insurance protection without deductibles or with deductibles less than provided by the Policies.  Plaintiff's lease says no such thing; it does not require insurance protection *without* deductibles. Assuming Insurers make payment in this instance, then the Policies dictate that Sears is to reimburse Insurers within 30 days.  Any payments made by Insurers would be a contractual "pass through" and direct exposure to Sears. As such, Sears is unequivocally an indispensable party here; they must be permitted to defend against a $4,000,000 exposure.  Therefore, the Amended Complaint must be dismissed.

The Amended Complaint should also be dismissed for improper venue. Sears has initiated Chapter 11 bankruptcy proceedings the United States Bankruptcy Court for the Southern District of New York. Such a filing gives rise to an automatic stay of proceedings under 11 U.S.C. §362. The automatic stay in the bankruptcy case, if applicable, would bar any action to join Sears to this action, thus requiring dismissal for failure (and inability) to join an indispensable party.

### Factual background

1.      Defendants issued several property insurance policies to Sears for the term period of June 1, 2018 to June 1, 2019 that provide coverage pursuant to their terms and conditions. (*See* Ironshore Specialty Insurance Company Policy, Ex. 1; Zurich American Insurance Company Policy, Ex. 2; Liberty Mutual Insurance Company Policy, Ex. 3; Allied World Assurance Company Policy, Ex. 4; Lloyd's Syndicate #318 ("MSP") Slip, Ex. 5, Hamilton Re, Ltd. Policy Ex. 6; ACE American Insurance Company Policy Ex. 7; Neon Policy Ex. 8; Westport Insurance Policy Ex. 9; AIG Europe Ltd. Policy Ex. 10; Tokio Marine America Insurance Policy Ex. 11; Sompo Endurance Worldwide Insurance Policy Ex. 12; Lloyd's

---

[2] Co-defendant, Liberty Mutual Fire Insurance Company has filed a Request for Judicial Notice, asking this Court to take judicial notice of certain documents filed in the Chapter 11 bankruptcy proceedings in *In Re Sears Holdings Corporation, et. al.*, No. 18-23538 (RDD) (S.D.N.Y.) Defendants hereby adopt and incorporate by reference Liberty Mutual's request for judicial notice and all the attached exhibits A through F. (*See* Ex. A to Liberty Mutual's Request for Judicial Notice.)

6595097.1

Syndicate #1183 Slip Ex. 13 and Aspen Specialty Insurance Policy Ex. 14 , Starr Surplus Lines Policy Ex. 15 and Barbicon Syndicate Policy Ex. 16 collectively referred to as ("the Policies"[3]))

2. Defendants participated in a commercial property program on a quota share basis for the period of June 1, 2018 through June 1, 2019.  The overall program provided for $50,000,000 in limits subject to the policies, terms and conditions.  *Id.*

3. While each Defendant issued its own policy, subject to their own terms, conditions, limitations and exclusions, all Defendants' Policies contained a 50 page Manuscript Policy Form. (*See*, the Manuscript Policy Form ("MPF") contained within each Insurer Defendant's Policy).

4. The Policies' Manuscript Policy Form provides in relevant part that [4]:

-  "Loss shall be adjusted with the Risk Management Department of the Insured…and all adjusted claims, including partial claims, shall be paid to the Insured or its order …." (*See*, MPF at ¶19 at p. 27);

-  "Loss, if any, shall be adjusted with and payable to Sears Holdings Corporation or as directed by it." (*See,* MPF at ¶ 53 at p. 35);

-  The following shall apply for losses arising from the specific critical catastrophic perils below;

* * *

 C.  Five percent (5%) of the value per unit of insurance at the time when such loss occurs at locations within the entire state of Florida and Tier 1 counties as more fully defined in the policy for the peril of Named Windstorm subject to a minimum of $5,000,000 in total for all units of insurance per Occurrence. This deductible shall apply only to those units of insurance suffering a loss in the Occurrence. (*See*, DEDUCTIBLES Section in MPF at pp. 6-8); ¶

---

[4] Defendants' Policies all contain the same Manuscript Policy Form.  The Policy page citations set forth herein are to those relevant pages within the Manuscript Policy Form within each Defendant Insurer's Policy.

- "… [T]he insured shall retain an additional non-stock deductible in the amount of $10,000,000 per occurrence excess of the deductibles listed in the Deductibles section of this policy above."

  (*See*, DEDUCTIBLES Section in MPF at p. 8).

  - **Deductible Clarifications:**

  . . .

  (4) Whenever mortgage or lease conditions require insurance protection without deductibles, or with deductibles less than are provided herein, **Insurers** agree to make payment without consideration of the applicable deductible. The Insured agrees to reimburse the **Insurers** for any payments so made within 30 days of such payment.

  (*See*, DEDUCTIBLES Section in MPF at p. 8).

  - **Percentage of liability:**

  In the event of direct physical loss or damage insured under this policy, this **Insurer** shall not be liable for more than its proportional share….

  (*See*, LIMIT OF LIABILITY Section in MPF at p. 4).

5.      Ironshore's percentage of liability is 2.5%; Zurich American Insurance Company's percentage of liability is 10%, ACE American Insurance Company's percentage of liability is 10%, Allied World Assurance Company, Ltd.'s percentage of liability is 13.333%, Syndicate No. 318 MSP's percentage of liability is 8.75%, Aspen Specialty Insurance Company's percentage of liability is 1.667%, Westport Insurance Corporation's percentage of liability is 8%, Syndicate No. 1414 ASC's percentage of liability is 5.25%, Toko Marine America Insurance Company's percentage of liability is 4%, Liberty Mutual Fire Insurance Company's percentage of liability is 4%, Syndicate No. 5151 Endurance's percentage of liability is 6.25%, AIG Europe Limited's percentage of liability is 6%, Syndicate No. 1183's percentage of liability is 4.25%, Syndicate No. 1955 Barbican's percentage of liability is 3.5%, Syndicate No. 2468 Neon's percentage of liability is 2.5%, Hamilton Re, Ltd.'s percentage of liability is 5%, and Starr Surplus Lines Insurance Company's percentage of liability is 5% (Ex. 1, Form IS. PROP.DEC.001C(10/10) at 1; ECF 1 at 60.)

8

6.      On March 20, 2020, Plaintiff, Gator Coastal, filed an Amended Complaint, alleging that Plaintiff, as landlord and owner of the Insured Premises, enjoyed "named insured" status under property insurance policies and/or series of property insurance policies issued by the Defendants. (Pl.'s Am. Compl. ¶¶ 23-24, ECF No. 62).

7.      The Amended Complaint further alleges that Gator Coastal leased the Insured Premises to Kmart Corporation ("Kmart"), which has allegedly suffered damages in the amount of approximately $4,000,000.00 as a result of Hurricane Florence, on September 13, 2018. (*Id*, ¶¶ 25, 28.)

8.      The lease, which is attached to the Amended Complaint as Composite Exhibit B, provides in relevant part:

> 20. From and after the "date of occupancy by Tenant," . . . upon written request of the landlord or mortgagee, Tenant shall procure fire insurance with extended coverage endorsement upon the building erected by Landlord . . . in an amount equal to one hundred percent (100%) of the replacement value of the building above the foundation walls. . . . In case of loss, Tenant is hereby authorized to adjust the loss and execute proof thereof in the name of all parties in interest . . . .

(Composite Ex. B at 14, ¶ 20, ECF 62-2.)

9.      The lease does not state that the tenant, Kmart, "agreed to ensure the placement of property insurance coverage protecting Gator Coastal as a "Named Insured" and "Loss Payee,"" as alleged in the Amended Complaint. (Pl.'s Am. Compl. ¶¶ 22, 24, 26, 40.) In fact, the lease expressly states it is the Tenant, Kmart, who is authorized to adjust the loss. (Composite Ex. B at 14, ¶ 20, ECF 62-2.).

10.     The lease does not require Kmart to procure or ensure the placement of property insurance coverage without deductibles, or with deductibles less than are provided by the Policies.  (ECF 62-2, pp. 14-15 of 50).

11.     To the extent that coverage exists, Plaintiff's claim is subject to the Policies applicable deductible.  Having plead the damages to be approximately $4,000,000, Plaintiff's claim is below the Policies' applicable deductibles.  (ECF 62 at ¶28.)

12.     Consistent with the Policies' provisions which states that loss should be adjusted and payable to Sears, as outlined above, the Lease similarly states that Kmart is authorized to adjust the loss and execute Proofs.  (ECF 62-2, p. 14 at ¶20).

13.     The  Certificate of Insurance (COI) attached to the Amended Complaint does not list Gator Coastal as a Named Insured or Additional Insured.  (ECF 62-1, pp. 14-16).  In fact, the Certificate of Insurance states as follows:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

*Id.*

14.     As expressly stated by the COI, the COI's terms does not affirmatively or negatively amend, extend or alter the coverage afforded by the Policies identified in the COI.  *Id.*

15.     By its terms, the COI did not amend or alter the Policies applicable deductible provisions including, but not limited to the non-stock deductible of $10,000,000.  *Id.*

16.     Plaintiff's Amended Complaint alleges damages of $4,000,000, an amount below the non-stock deductible that is contained within Defendants' Policies.   (ECF 62 ¶ 52; see also, DEDUCTIBLES Section in MPF at p. 8).

17.     The Amended Complaint does not name Sears as a Defendant. (Pl.'s Am. Compl.)

18.     The Allied World Assurance Ltd. policy contains a Bermuda Arbitration and Choice of Law Clause endorsement (No. 11) which expressly states, in part, as follows:

> "Any and all disputes arising under or relating to this Policy, including but not limited to, its formation and validity, shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act 1993 (exclusive of the Conciliation Part of such Act), as may be amended and supplemented, by a Board composed of three arbitrators to be selected for each controversy as follows…"

*See,* Exhibit "4".

19.     The Hamilton Re policy contains a London Arbitration clause which states, in pertinent part, as follows:

> Any dispute, controversy or claim arising out of or relating to this Certificate or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Act 1996 ("Act") and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of three arbitrators to be selected for each controversy as follows…."

*See*, Exhibit "6".

## Memorandum of law

**I.    The Amended Complaint must be dismissed because Plaintiff has not met its burden to establish diversity jurisdiction; therefore, this Court lacks subject matter jurisdiction.**

Plaintiff claims this Court has jurisdiction pursuant to 28 U.S.C. § 1332. (Pl.'s Am. Compl. ¶1.) The Amended Complaint must be dismissed because it fails to establish subject matter jurisdiction as the amount in controversy has not been met and complete diversity of citizenship is not satisfied. Under 28 U.S.C. § 1332, district courts have original jurisdiction of civil actions where the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of different states. Gator Coastal failed to prove either that the jurisdictional amount is met or that the parties are diverse.

### A.    Legal standard.

A motion to dismiss pursuant to the Federal Rule of Civil Procedure 12(b)(1) based facially on the complaint requires the court to determine "if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). When a Court's subject matter jurisdiction is challenged under Rule 12(b)(1), the Plaintiff has the burden of proving jurisdiction by a preponderance of the evidence in order to survive the motion. *Caron v. NCL, Ltd.*, 910 F.3d 1359, 1363-1364 (11th Cir. 2018). In a facial attack on subject matter jurisdiction,

11

the allegations in the complaint are taken as true for purposes of the motion. *Scarfo*, 175 F.3d at 960. "Factual attacks challenge 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Scarfo*, 175 F.3d at 960. "[I]n a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence." *Id.* "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

> **B.    The Amended Complaint fails to satisfy the amount-in-controversy requirement as it aggregates the claims against all Defendants.**

The claims of a single plaintiff against multiple defendants can be aggregated for jurisdictional purposes only if the defendants are jointly liable to the plaintiff on each claim. *See, e.g.*, *Tolbert v. Cook*, CA 8:13-03312-GRA, 2014 WL 1652434, at *2 (D.S.C. Apr. 23, 2014). However, where the liability alleged is separate, rather than joint, aggregation is not permitted even if the claims arise out of the same transaction. *Id.* (citing *Ex Parte Phoenix Ins. Co.*, 117 U.S. 367, 369, 6 S.Ct. 772, 29 L.Ed. 923 (1886) and *Jewell*, 290 F.2d at 13 (holding that "no joint liability of the defendant insurance companies" existed to "permit[ ] the claims against them to be joined for determining jurisdiction")); *see also Liberty Mut. Fire Ins. Co. v. Hayes*, 122 F.3d 1061, at *2 (4th Cir. Sept. 15, 1997) ("[i]f a single plaintiff joins several parties as defendants, the plaintiff may not aggregate the various claims unless the defendants' liability is common, undivided, or joint"). Moreover, "[a]ggregation is keyed to the type of recovery, not the factual relatedness of the claims." *Hayes*, 122 F.3d 1061, at *2 (finding that the plaintiff could not aggregate claims against multiple insurers where he had not stated a joint and several claim against them); *see also* James W. Moore et al., Moore's Federal Practice ¶ 0.97[2] (2d ed. 1995) ("Basically, aggregation is allowed when the defendants' liability to the plaintiff is common, undivided, or joint. It is not allowed when the defendants' liability is several, or if the claims against them are separate and distinct from one another.").

Here, the Amended Complaint alleges in general fashion that "this action involves an amount in controversy that exceeds seventy-five thousand dollars ($75,000.00)." (Pl.'s Am. Compl. ¶1). However, because the Defendants are severally liable, the jurisdictional amount

must be met as to each one of the Defendants. *See Cook*, 2014 WL 1652434, at *2; *Jewell*, 290 F.2d at 13; *Hayes*, 122 F.3d 1061, at *2. Even with the alleged $4 million in damages to the subject building, according to the Certificate of Insurance attached as Plaintiff's Exhibit A, insurer Aspen Specialty Insurance Company, with a 1.667% percentage participation in the insurance program would only be liable for $66,680.00. Therefore, on its face, the Amended Complaint fails to establish the requisite amount for this Court to exercise subject matter jurisdiction.

Additionally, because several Lloyd's syndicates are named as Defendants, the jurisdictional amount must be met as to each constituent Name. As explained by the Eleventh Circuit, the Society of Lloyd's, London, is not an insurance company, but a British organization that provides infrastructure for the international insurance market. *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1083 (11th Cir. 2010). Lloyd's itself does not insure any risk. *Id.* Rather, it is individual underwriters, referenced as "Names," who assume the risk. *Id.* Names can be either people or corporations, who sign up for certain percentages of risk across different policies. *Id.* Names underwrite insurance through syndicates, which are unincorporated administrative entities that bear no risk on the policies they underwrite. *Id.* Syndicates "operate as an aggregation of individual members with individual contracts and obligations running to the insured." *Id.* at 1089. The constituent Names of a syndicate are severally liable to the policy holder for their respective share of the risk. *Id.* at 1083, 1089.

Thus, because one Name is not liable for the risks that the other Names assume, each individual Name must meet the amount in controversy for purposes of the jurisdictional amount. *See, e.g.*, *Lloyd's v. Gailes*, 4:16-CV-77-DMB-JMV, 2016 WL 3033741, at *4 (N.D. Miss. May 26, 2016)(finding that the plaintiff could not aggregate its claims against individual Names, and that "it must plead that the $75,000 jurisdictional amount is met for *each* Name")(emphasis in original); *Rips, LLC v. Underwriters at Lloyd's London*, No. CIV.A. 14-1969, 2015 WL 2452339, at *2 (E.D. La. May 21, 2015) (the jurisdictional minimum must be met as to each individual Name); *G & M Holding, Inc. v. Certain Underwriters at Lloyd's of London*, Civ. A. No. 07–4883, 2008 WL 215842, *2 (E.D.La. Jan. 23, 2008) (granting dismissal because plaintiff failed to assert facts to establish that the jurisdictional amount was met as to each Name sued under the policy and because at least one Name was non-diverse); *E.R. Squibb & Sons, Inc. v.*

*Accident & Cas. Ins. Co.,* 160 F.3d 925, 933 (2nd Cir. 1998) (holding that because the Names were severally liable under the insurance policy in question, their liability could not be aggregated to meet the jurisdictional minimum).

Here, the Amended Complaint does not allege that the amount in controversy is met as to each constituent Name of each Lloyd's syndicate named as Defendant. *See supra Lloyd's*, 2016 WL 3033741, *Rips, LLC*, 2015 WL 2452339, *G & M Holding, Inc.*, 2008 WL 215842.

Thus, facially, the Amended Complaint fails to properly plead that the jurisdictional amount as to each Defendant is met and it should be dismissed.

### C.    The Amended Complaint does not establish complete diversity of citizenship.

To establish federal jurisdiction, all parties must be diverse. *Osting-Schwinn*, 613 F.3d at 1085. While "corporations are considered legal persons whose citizenship does not depend on that of their shareholders […] unincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. §1332." *Id.* at 1086. Underwriters at Lloyd's, London "fall squarely within the class of unincorporated associations for which the pleading of every member's citizenship is essential to establishing diversity jurisdiction." *Id.* at 1088. Thus, in order to establish complete diversity of citizenship, the Complaint must plead the citizenship of each Name. *Id.* at 1091.  In other words, when underwriters subscribing to a Lloyd's policy are sued in or removed to Federal Court, all "Names" must be considered in determining whether the Federal Court has subject matter jurisdiction under 28 U.S.C. §1332 and the party asserting federal jurisdiction must establish that all individual Names or Members are diverse from all adverse parties, and that the claim against each individual Name or Member meets the $75,000 minimum amount in controversy as referenced above.[5]

---

[5] *See also*, See *Team One Props., LLC v. Certain Underwriters at Lloyd's London,* 281 Fed. Appx. 323 (5th Cir. 2008), aff'g *Team One Props., LLC v. Certain Underwriters at Lloyd's, London,* 2007 U.S. Dist. LEXIS 90912 (E.D. La. 2007) (Berrigan, J.); *McAuslin v. Grinnell Corp.,* 2000 U.S. Dist. LEXIS 11378, pp. 12-19 ( E.D. La. 2000) (Vance, J.); *Walle Bldg. Condo. Ass'n v. Certain Underwriters at Lloyd's London*, 2008 U.S. Dist. LEXIS 84848, p. 5 (E.D. La. 2008) (Lemmon, J.); *G & M Holding, Inc. v. Certain Underwriters at Lloyd's of London,* 2008 U.S. Dist. LEXIS 5341, pp. 4-5 (E.D. La. 2008) (Barbier, J.); *St. Charles Prop. Ass'n v. Certain Underwriters at Lloyd's London*, 2009 U.S. Dist. LEXIS 96436, pp. 5, 8-9 (E.D. La. 2009) (Berrigan, J.); *Johnson v. Certain Underwriters at Lloyd's London*, 2009 U.S. Dist. LEXIS 131701, pp. 5, 7-9 (E.D. La. 2009) (Berrigan, J.); *Underwriters at Lloyd's,*

14

A review of the Amended Complaint reveals that the Plaintiff does not allege the citizenship of each Name of each Lloyd's syndicate named as a Defendant, but only the citizenship of each syndicate itself. (Pl.'s Am. Compl. ¶¶ 6, 9, 13, 15, 16, 17.) This is clearly insufficient for establishing complete diversity of citizenship and the Amended Complaint should be dismissed on this ground as well. *See Osting-Schwinn supra.*

By way of example and not limitation:

- Syndicate No. 1183 is an underwriting syndicate at Lloyd's and Syndicate 1183 is not incorporated;

- Neon Lloyd's of London Syndicate No. 2468 is comprised of three capital providers or "corporate members", Lavenham Underwriting Limited, Sampford Underwriting Limited and GAI Indemnity, Ltd. Neon Underwriting Limited is not a risk carrier but a Lloyd's managing agent who manages the business on behalf of Syndicate No. 2468; and

- Syndicate No. 318 similarly has names behind it.

As outlined above, diversity must be established for each Name behind the Lloyd's syndicates which has not been demonstrated.   As such, the Amended Complaint must be dismissed.

## II.     If this Court finds that it has subject matter jurisdiction, then the Amended Complaint must still be dismissed, because it fails to state a cause of action

### A.     Legal standard.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal

---

*London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010); *Indiana Gas Co. v. Home Ins. Co.,* 141 F.3d 314, 317 (7th Cir. 1998); *Certain Underwriters at Lloyd's London Subscribing to Policy Number B066421355A04 v. Washington*, 2009 U.S. Dist. LEXIS 123194, pp. 9-10 (E.D. La. 2009) (Engelhardt, J.).

6595097.1

sufficiency of a complaint's allegations, the Court must determine if the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (citation and internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Twombly*, 550 U.S. at 555.

   **B.**     **The Amended Complaint fails to state a cause of action as to Defendants because Gator Coastal has no interest in the subject policies, nor has it any right to make claim on the proceeds from the policies; it cannot state a claim upon which relief can be granted.**

   The subject policies are contracts between each Defendant and Sears Holdings Corporation. Because Gator Coastal is not a party to these contracts of insurance, and because nothing in the contracts give Gator Coastal any rights to claim or recover proceeds of the policies, Gator Coastal cannot state a claim upon which this Court can grant relief. Therefore, pursuant to Rule 12(b)(6), Defendants move this Court to dismiss Gator Coastal's Amended Complaint.

   **(1) This is not a summary judgment motion.** Defendants recognize that this Court's use of matters outside the pleadings under Rule 12(d) generally require this Court to treat the matter as a summary judgment motion. However, The Eleventh Circuit has adopted the "incorporation by reference" exception to Rule 12(d), and this exception should apply here. Under this exception, a court may consider a document attached to a motion to dismiss without converting it into a motion for summary judgment "only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "Undisputed" means that "the authenticity of the document is not challenged." *Id.*

The incorporation by reference exception should apply here, because the policies are the contracts on which Gator Coastal has brought this suit. As such, they are central to Gator Coastal's claim. The contents of the policies are presumed by Defendants to be undisputed, *i.e.,* that Gator Coastal does not challenge the authenticity of the document.  If Gator Coastal, in fact, does challenge the authenticity of this document, then Defendants would withdraw this portion of its motion so that the matter is not treated by the Court as a summary judgment motion, and allow the parties to resolve the dispute in the course of discovery so that the issue may ripen for consideration at a later point.

**(2) Under either Florida or Illinois law, only the insured or specified third parties may bring a suit, and Gator Coastal does not meet those specifications.**

Under either Florida or Illinois law, the general rule is that only an insured or specified parties can sue on an insurance policy.

> A person who is not a party to a contract may not sue for breach of that contract where that person receives only an incidental or consequential benefit from the contract. . . . The exception to this rule is where the entity that is not a party to the contract is an intended third party beneficiary of the contract. . . . A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party or a class of persons to which that party claims to belong.

*Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.*, 647 So. 2d 1028, 1030–31 (Fla. 4th DCA 1994).  This rule is observed in Florida's federal courts. "A person who is not a party to a contract may not enforce its terms even where that person receives an incidental or consequential benefit from the contract." *Richardson v. Progressive Am. Ins. Co.*, No. 218CV715FTM99MRM, 2019 WL 2287955, at *7 (M.D. Fla. May 29, 2019) (citing *Esposito v. True Color Enters. Constr., Inc.*, 45 So. 3d 554, 555 (Fla. 4th DCA 2010)).

The law of Illinois, which applies to Defendants' contracts, observed in the Seventh Circuit Court of Appeals, is essentially the same. Generally stated, Illinois law requires that an "action on an insurance policy should be brought in the name of the person having a legal interest in the subject matter of the action[,]" i.e., the insured or the person for whose benefit the contract of insurance was made. 22A Ill. Law and Prac. *Insurance* § 487 (footnotes and citations omitted).

17

> If a contract be entered into for a direct benefit of a third person not a party
> thereto, such third person may sue for breach thereof. The test is whether the
> benefit to the third person is direct to him or is but an incidental benefit to him
> arising from the contract. If direct he may sue on the contract; if incidental he has
> no right of recovery thereon. Each case must depend upon the intention of the
> parties as gleaned from a consideration of all of the contract and the
> circumstances surrounding the parties at the time of its execution. The right of the
> third party benefited by a contract to sue thereon rests upon the liability of the
> promisor, and this liability must appear from the language of the instrument when
> properly interpreted and construed. The liability so appearing cannot be extended
> or enlarged on the ground, alone, that the situation and circumstances of the
> parties justify or demand further or other liability. . . . As people usually stipulate
> for themselves, and not for third persons, a strong presumption obtains in any
> given case that such was their intention, and that the implication to overcome that
> presumption must be so strong as to amount practically to an express declaration.

*Metro E. Sanitary Dist. v. Vill. of Sauget*, 131 Ill. App. 3d 653, 657–58, 475 N.E.2d 1327, 1330

(1985).

Plaintiff claims to be an insured under the Policies.  (ECF 62, ¶¶22, 24 and 26).   This

fact is entirely unsupported by the Complaint or its attachments.  Plaintiff is not a named insured,

additional insured or loss payee under the Policies, nor are they listed as a Named Insured in the

Certificate of Insurance.  (ECF 62-2, pp. 3-6).  Plaintiff is a Certificate Holder and that certificate

reads as follows:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY
> AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER.  THIS
> CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND,
> EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES
> BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE
> A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED
> REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

Moreover, the purported Lease between Plaintiff and Kmart does not require Plaintiff to

be listed as Named Insured.  (ECF 62-2, pp. 14-15 of 50).  The policies do not show any

intention that the insurance policies primarily and directly benefit Gator Coastal. Gator Coastal

has no direct interest in the insurance contracts with Sears, and so it cannot make a claim on the

proceeds of the policies.

18

The Seventh Circuit Court, analyzing the right of a third-party beneficiary to sue, found as followed:

> [P]laintiff [i.e. the contractor ], irrespective of all other considerations, is not, in our judgment, entitled to maintain the instant suit [against the builder's risk insurer] because he was not named as an insured and, so far as we are aware, the contracts contain nothing which indicates they were made for his benefit or protection. In fact, he was a total stranger to the insurance policies issued by the defendant companies to the [property owner], in which the latter was the sole insured or beneficiary.

*Klefstad v. Am. Cent. Ins. Co.*, 207 F.2d 288, 289 (7th Cir. 1953) (affirming summary judgment against a contractor who made claim on its employer, the property owner, who purchased a builder's risk contract that insured only the property owner). The Seventh Circuit reasoned:

> The rule is, that the right of a third party benefited by a contract to sue thereon rests upon the liability of the promisor, and this liability must affirmatively appear from the language of the instrument when properly interpreted and construed. The liability so appearing cannot be extended or enlarged on the ground, alone, that the situation and circumstances of the parties justify or demand further or other liability.

*Klefstad*, 207 F.2d at 290.

Like the builder's risk policy in *Klefstad*, the Defendants' insurance policies, i.e., the contracts at issue here, show no intention to "primarily or directly" benefit Gator Coastal. The subject policies were issued to "Sears Holdings Corporation." (*See* Policies.) Neither the landlord/owner "Coastal Mall Joint Venture," nor the Plaintiff, Gator Coastal, are referenced in the policies. The lease, attached to the Amended Complaint states:

> 20. From and after the "date of occupancy by Tenant," . . . upon written request of the landlord or mortgagee, Tenant shall procure fire insurance with extended coverage endorsement upon the building erected by Landlord . . . in an amount equal to one hundred percent (100%) of the replacement value of the building above the foundation walls. . . . In case of loss, Tenant is hereby authorized to adjust the loss and execute proof thereof in the name of all parties in interest . . . .

(Composite Ex. B at 14, ¶ 20, ECF 62-2.)

This lease provision does not require Sears as successor of Kmart to include "Gator Coastal as a "Named Insured" and "Loss Payee,"" as alleged in the Amended Complaint. (Pl.'s Am. Compl. ¶ 26.)   Moreover, the lease expressly states it is the Tenant, Kmart, that is

authorized to adjust the loss.   (Composite Ex. B at 14, ¶ 20, ECF 62-2.)   That Kmart is authorized to adjust the loss is consistent with the Policies terms.  (MPF at ¶19).  The important point is this: The lease does not create rights in Gator Coastal to recover from a contract to which it is not a party, i.e., the Defendants' policies. "To find the requisite intent, it must be established that the parties to the contract [i.e., the insurance policies] actually and expressly intended to benefit the third party; it is not sufficient to show only that one of the contracting parties unilaterally intended some benefit to the third party." *Richardson,* 2019 WL 2287955 at *7. Here, there is no indication that either party to the insurance contract, i.e., Sears or Defendants, intended to benefit Gator Coastal. As in *Kelfstad*, Gator Coastal is like the plaintiff contractor who was not an insured under the terms of the policies and they were not issued for his benefit and that was enough for the appellate court to affirm the summary judgment against the contractor plaintiff. *Id.* at 291.

The case should be dismissed for failure to state a cause of action on which relief may be granted.

**(3)     Under Illinois law, Gator Coastal cannot show a breach of contract.**

Under Illinois law, the essential elements of a breach of contract action are: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff." *Pepper Const. Co. v. Palmolive Tower Condominiums, LLC*, 59 N.E.3d 41, 66 (Ill. App. 2016).  Here, although there are several valid contracts of insurance between Sears and Defendants, the contracts are not enforceable by Gator Coastal because any loss must "be adjusted with" and is "payable to Sears Holdings Corporation or as directed by it." *See* the Policies, MPF at ¶¶19 and 53. Since there is no payment owed to Gator Coastal, Defendants could not be in breach of contract. Therefore, Gator Coastal has failed to state a cause of action for breach of contract against Defendants, and its Amended Complaint is due to be dismissed.

**(4)     Defendants' policy terms are not ambiguous**

Like other contracts, contracts of insurance should receive a construction that is reasonable, practical, sensible, and just.  *Weldon v. All Am. Life Ins. Co.*, 605 So.2d 911, 915 (Fla. 2d DCA 1992). Terms used in a policy should be read in light of the skill and experience of ordinary people. *Lindheimer v. St. Paul Fire & Marine Ins. Co.*, 643 So.2d 636, 638 (Fla. 3d

DCA 1994). Insurance policies will not be construed to reach an absurd result. *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1140 (Fla.1998).

Policy provisions excluding or limiting the insurer's liability are construed more strictly than coverage provisions. *Purrelli v. State Farm Fire & Cas. Co.*, 698 So.2d 618, 620 (Fla. 2d DCA 1997). Such limiting provisions must be construed in favor of the insured if they are ambiguous or reasonably susceptible to more than one meaning. *Deni*, 711 So.2d at 1138. However, the rule of liberal construction in favor of the insured applies only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction. *Id.* In construing an insurance policy, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect. *Auto-Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). A single policy provision should not be considered in isolation, but rather, the contract shall be construed according to the entirety of its terms as set forth in the policy and as amplified by the policy application, endorsements, or riders. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So.2d 161, 166 (Fla. 2003) (citing § 627.419(1), Fla. Stat. (2002)); *The Praetorians v. Fisher*, 89 So.2d 329, 333 (Fla. 1956). The lack of a definition of an operative term does not, by itself, create ambiguity. *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1076 (Fla.1998); *Great Am. Ins. Cos. v. Souza*, 855 So.2d 187 (Fla. 4th DCA 2003). Further, ambiguity does not exist merely because an insurance contract is complex and requires analysis to interpret it. *Swire Pac. Holdings*, 845 So.2d at 165; *Koenigsberg v. Intercontinental Ins. Co.*, 571 So.2d 578, 579 (Fla. 4th DCA 1990) (construing a deductible provision); *Am. Motorists Ins. Co. v. Farrey's Wholesale Hardware Co.*, 507 So.2d 642, 645 (Fla. 3d DCA 1987); *Travelers Ins. Co. v. C.J. Gayfer's & Co.*, 366 So.2d 1199, 1201 (Fla. 1st DCA 1979). Where no ambiguity exists, the policy shall be construed according to the plain language of the policy as bargained for by the parties. *Anderson*, 756 So.2d at 33. Here, the Plaintiff cannot simply state the policy terms defining "Named Insured" an "insured" or provisions defining and clarifying the scope and application of any stated deductible are all "ambiguous". There is no inconsistency or uncertainty as to who the Named Insured is and Plaintiff has not presented any allegations of mutual mistake during the contract formation where the Named Insured was meant to be an entity other than the one the Policies were drafted for.

**C.     The Lease Required The Procurement of "Fire Insurance" Only; No Contractual Obligation Existed Under the Lease or the Policies To Provide Plaintiff With All-Risk or Named Windstorm Coverage.**

Under the subject Lease, Kmart was only responsible for procuring "fire insurance" which would not have covered Plaintiff's losses here which were caused by a named windstorm. The Certificate of Insurance attached to Plaintiff's Complaint expressly conditions coverage on the terms of the Lease.  The Lease only requires the procurement of "fire insurance" subject to the two conditions precedent.  Even if the duty to procure "fire coverage" was triggered, Defendants would have no liability because no fire occurred.  Plaintiff's damages result from a named windstorm and neither the Kmart lease nor the Certificate of Insurance required Defendants to provide for named windstorm coverage in the first instance.  (ECF 62-1, pp.3-6; ECF 62-2, pp.14-15).  Getting past the labels and conclusions set forth in the Complaint, the contents of the Lease and certificate do not support Plaintiff's claims or causes of action and, as such, must be dismissed.

**D.     The Policies Applicable Deductibles Preclude Coverage**

All Defendants' policies contain a significant deductible of 5% of the value of the location at the time when the loss occurs and, an additional $10,000,000 non-stock deductible. Plaintiff's claim is for $4,000,000, well below the Policies' applicable deductibles.  Plaintiff claims to be a Named Insured and yet simultaneously seeks to be relieved of the Policies' deductibles.  ECF 62at ¶44; *see also*, Policies at pp. 7-8.  In support of this position, Plaintiff relies on a deductible provision that states that:

> "Whenever mortgage or *lease conditions require insurance protection without deductibles,* or with deductibles less than are provided herein, Insurers agree to make payment without consideration of the applicable deductible.  The Insured agrees to reimburse the Insurers for any payment so made within 30 days of such payment."

(*See*, the Policies 7 – 8; Deductible Clarifications; *emphasis added*).

Effectively, Plaintiff seeks a risk transfer to Sears on the order of $4,000,000 because – pursuant the Policies terms - Sears is the ultimate party at Risk; Sears agreed to reimburse

22

Insurers for any payment so made within 30 days.[6]  While the Policies make clear that the Lease conditions must affirmatively require insurance protection without deductibles, Plaintiff seeks to be relieved of the applicable deductibles despite the absence of the very Lease condition which serves as a condition precedent to the deductible relief requested.  If the condition is not met, as is the case here because there is no such requirement in the Lease, then Plaintiff cannot be relieved of the applicable deductibles. (ECF 62-2, pp.14-15).

The Lease attached to Plaintiff's Amended Complaint is virtually silent on the issue of deductibles and no factual support exists for the notion or allegation that the lease conditions require protection without deductibles or deductibles less than are provided within the policies. As Plaintiff's claims are indeed subject to applicable deductibles and, the claim - as plead - falls well below the policies applicable deductibles, no cause of action exists against Defendants and Plaintiff's Complaint must be dismissed.

E.   **Count II, IV, VI, VIII, X, XII, XIV, XVI, XVIII, XX, XXII, XXIV, XXVI, XXVIII, XXX, XXXII and XXXIV of Plaintiff's Amended Complaint ("Declaratory Judgment Counts") Should Be Dismissed under Rule 12(B)6 Because they Present Improper Declaratory Actions**

Courts have discretion in deciding whether to allow a declaratory action to proceed. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995). The relevant inquiry for the Court to make "in a motion to dismiss a declaratory-judgment action is whether or not the plaintiff is entitled to a declaration of rights." *Bleau Fontaine Condo. Ass'n No. Three, Inc. v. Indian Harbor Ins. Co.*, 2019 WL 1932785, at *2 (S.D. Fla. Jan. 10, 2019). "It is well-settled that equitable relief is available only in the absence of an adequate remedy at law." *SME Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 Fed. Appx. 502, 503–04 (11th Cir. 2007) (internal citations omitted).  A trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief. *Bleau Fontaine Condo. Ass'n No. Three, Inc*, 2019 WL 1932785 at *2 (S.D. Fla. Jan. 10, 2019)).

---

[6] If Plaintiff is correct and it is relieved of the Policies applicable deductibles (which is not the case here), then Sears must be joined as indispensable part to defend itself against the $4,000,000 exposure.

The purpose of a declaratory judgment action is to clarify legal relations and to settle controversies prior to a breach of the contract. *Eisenberg v. Standard Ins. Co.*, 2009 WL 1809994, *3 (S.D. Fla. June 25, 2009). Questions regarding whether a contract was breached are unrelated to the purpose behind a declaratory judgment action, as such claims are nothing more than a petition claiming breach of contract. *Advanced Fluids Solutions, L.L.C. v. National Ass'n for Stock Car Auto Racing, Inc.*, 2011 WL 3627413 (M.D. Fla. July 26, 2011).

If the determination of the plaintiff's breach of contract claim involves the same factual dispute as the declaratory-judgment claim, then the "Plaintiff will be able to secure full, adequate and complete relief through the breach of contract claim" and consequently, "the declaratory action must be dismissed." *Berkower v. USAA Cas. Ins. Co.*, 2016 WL 4574919, at *5 (S.D. Fla. Sep. 1, 2016) (quoting *Fernando Grinberg Trust Success Int'l Props., LLC v. Scottsdale Ins. Co.*, No. 10-20448-Civ, 2010 WL 2510662, at *1–2 (S.D. Fla. June 21, 2010).

In the Declaratory Judgment Counts, Plaintiff seeks a declaration of rights to determine whether the loss resulting from the property damage is covered by the insurance policies. Pl.'s Am. Compl. ¶¶ 63-298The determination of Plaintiff's breach of contract claim involves the same factual dispute as the declaratory judgment claim: specifically, to what extent the property damage suffered is covered by the insurance policies. Simply, Plaintiff will be able to secure full, adequate, and complete relief through the breach of contract claim. As such, insofar as this Court does not completely dismiss Plaintiff's Amended Complaint in its entirety, it should dismiss the Declaratory Judgment Counts of the Complaint.

The federal Declaratory Judgment Act, 28 U.S.C. §2201, provides federal courts with the authority to declare the rights and other legal relations of interested parties seeking a declaration. 28 U.S.C. §2201. However, Courts have discretion in deciding whether to allow a declaratory action to proceed. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 284 (1995). A court may declare the rights and other legal relations of any interested party in the case of an actual controversy within its jurisdiction. 28 U.S.C. § 2201. The relevant inquiry for the Court to make "in a motion to dismiss a declaratory-judgment action is whether or not the plaintiff is entitled to a declaration of rights." *Bleau Fontaine Condo. Ass'n No. Three, Inc. v. Indian Harbor Ins. Co.*, 2019 WL 1932785, at *2 (S.D. Fla. Jan. 10, 2019). "It is well-settled that equitable relief is available only in the absence of an adequate remedy at law." *SME Racks, Inc. v. Sistemas Mecanicos Para,*

24

*Electronica, S.A.*, 243 Fed. Appx. 502, 503–04 (11th Cir. 2007) (internal citations omitted).  A trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief. *Bleau Fontaine Condo. Ass'n No. Three, Inc*, 2019 WL 1932785 at *2.

The purpose of a declaratory judgment action is to clarify legal relations and to settle controversies prior to a breach of the contract. *Eisenberg v. Standard Ins. Co.*, 2009 WL 1809994, *3 (S.D. Fla. June 25, 2009). Questions regarding whether a contract was breached are unrelated to the purpose behind a declaratory judgment action, as such claims are nothing more than a petition claiming breach of contract. *Advanced Fluids Solutions, L.L.C. v. National Ass'n for Stock Car Auto Racing, Inc.*, 2011 WL 3627413 (M.D. Fla. July 26, 2011).

If the determination of the plaintiff's breach of contract claim involves the same factual dispute as the declaratory-judgment claim, then the "Plaintiff will be able to secure full, adequate and complete relief through the breach of contract claim" and consequently, "the declaratory action must be dismissed." *Berkower v. USAA Cas. Ins. Co.*, 2016 WL 4574919, at *5 (S.D. Fla. Sep. 1, 2016) (quoting *Fernando Grinberg Trust Success Int'l Props., LLC v. Scottsdale Ins. Co.*, No. 10-20448-Civ, 2010 WL 2510662, at *1–2 (S.D. Fla. June 21, 2010))

In the Declaratory Judgment Counts, Plaintiff seeks a declaration of rights to determine whether the loss resulting from the property damage is covered by the insurance policies. *Id.* The determination of Plaintiff's breach of contract claim involves the same factual dispute as the declaratory judgment claim: specifically, to what extent the property damage suffered is covered by the insurance policies. Simply, Plaintiff will be able to secure full, adequate, and complete relief through the breach of contract claim. As such, insofar as this Court does not completely dismiss Plaintiff's Amended Complaint in its entirety, it should dismiss the Declaratory Judgment Counts of the Complaint.

**III.    If this Court finds that it has subject matter jurisdiction, then the Amended Complaint must still be dismissed, because it fails to join Sears, an indispensable party.**

**A.    Legal standard.**

25

"In considering a Rule 12(b)(7) motion, the Court applies the standards of Federal Rule of Civil Procedure 19 to determine whether dismissal is appropriate." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1315-16 (M.D. Fla. 2000).   Federal Rule of Civil Procedure 19(a) states in relevant part:

> (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if
> (1) in his absence, complete relief cannot be accorded among those already parties, or
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the act in his absence may
> (i) as a practical matter impair or impede his ability to protect that interest or
> (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

The Eleventh Circuit uses the following two-step approach when analyzing a motion to dismiss for failing to join a required party pursuant to Rule 19:

> First, the court must ascertain under the standards of Rule 19(a) whether the [party] in question is one who should be joined if feasible. If the person should be joined but cannot (because for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue.

*Helix Inv. Mgmt., LP v. Privilege Direct Corp.*, 364 F. Supp. 3d 1343, 1350 (M.D. Fla. 2019). (citing *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1279-80 (11th Cir. 2003) and *Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc.*, 669 F.2d 667, 669-71 (11th Cir. 1982)).   Using this two-step analysis, "dismissal for failure to join an indispensable party [under Rule 19] is only appropriate where the nonparty cannot be made a party." *Mid-Continent Cas. Co. v. Basdeo*, No. 08-61473-CIV, 2009 WL 2450386 at *2-3 (S.D. Fla. Aug. 7, 2009).

    **B.**    **The Amended Complaint must be dismissed pursuant to Rule 19 and Rule 12(b)(7) because Sears is an indispensable party who cannot be joined to the litigation, and all three factors enumerated in Rule 19(b) are present.**

The Court cannot accord the relief sought by Gator Coastal, i.e., direct payment of the policies' proceeds from Defendants to Gator Coastal. Such relief would be contrary to the

26

Policies, and impose an obligation on Defendants not contained in their contracts with Sears Holdings. The Policies provide, in pertinent part: "Loss, if any, shall be adjusted with and payable to Sears Holdings Corporation or as directed by it." (MPF at ¶19).

Under rule 19(a)(1)(A), Sears Holdings is a required party under this provision of the insurance policies, as it is the only entity with whom the claim of Gator Coastal may be adjusted, and the only entity that is entitled to receive the payment.

Alternatively, even assuming as true the allegations in the Amended Complaint that the lease and policies provide this Court the power to order insurers to pay Gator Coastal directly, still, Sears Holdings would be a necessary party. Gator Coastal claims its losses total $4 million. The Policies contain a $10 million "non-stock" deductible. ("[T]he insured shall retain an additional non-stock deductible in the amount of $10,000,000 per occurrence excess of the deductibles listed in the Deductibles section of this policy above."). (MPF at p.8). Gator Coastal has alleged that it is entitled to "coverage for the Insured Premises (blanket building and personal property) with $50 Million Limits without any identified deductible(s)" (Pl.'s Am. Compl. ¶44.) Assuming the truth of this allegation for purposes of this motion, the following provision of the Policies would be triggered and control:

**Deductible Clarifications:**

. . . .

(4) Whenever mortgage or lease conditions require insurance protection without deductibles, or with deductibles less than are provided herein, **Insurers** agree to make payment without consideration of the applicable deductible. The **Insured** agrees to reimburse the **Insurers** for any payments so made within 30 days of such payment.

(*See*, MPF at p. 8). The Insured is Sears. Therefore, if Defendants are required by order of this Court to pay some portion of the $4 million claimed without regard to the deductible, the operation of this policy clause will obligate Sears to reimburse Defendants that amount within 30 days. Given these facts, Sears is an indispensable party under Rule 19(a)(1), Rule 19(b)(i), and Rule 19(b)(ii).

**Rule 19(a)(1)(A) (complete relief cannot be afforded):**  Without the joinder of Sears this Court may be able to enforce one part of the insurance policy, i.e., payment to Gator Coastal without application of the deductible, but it will not be able to enforce the deductible

27

"clarification," which obligates Sears to reimburse the insurers within 30 days for paying that which Sears owes. Application of the deductible, if this case is to go forward, will be stated as an affirmative defense. This Court could not enforce the entirety of the contract (payment by insurers first – reimbursement by Sears within 30 days next). Where "complete relief cannot be accorded among those already parties," this Court "shall" join Sears if feasible. But where the non-party (here Sears) cannot be joined, dismissal under Rule 19 is appropriate. *Mid-Continent Cas. Co. v. Basdeo*, 2009 WL 2450386 at *2-3.

**Rule 19(a)(1)(B)(i) (Sears cannot protect its interest in the subject matter of the suit):** Without joinder of Sears it will not be able to protect its obvious interest in the subject matter of this action, i.e., a determination of Sears' uninsured liability to Gator Coastal, and the amount of that uninsured liability. Gator Coastal alleges that the insurers are liable for $4 million in damages, and that liability is insured under the policies. But under the policies, no part of that sum is insured, as it is below the $10 million deductible. Assuming arguendo insurers are obligated to first pay Gator Coastal $4 million, Sears will ultimately pay that judgment. The uninsured liability of Sears has been placed at issue by Gator Coastal in its Amended Complaint. Without being joined to this action, Sears cannot assert its defenses to these allegations, or assert its rights as provided by the bankruptcy code. As a practical matter, Sears' absence from the suit will "impair or impede [Sears'] ability to protect that interest." Therefore, Sears is an indispensable party, and the inability of Gator Coastal to hale it into this Court in this action makes dismissal of the action appropriate.

**Rule 19(a)(1)(B)(ii) (insurers will be subject to inconsistent obligations):** Without joinder of Sears, the "persons already parties" to this suit will be subjected "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of [Gator Coastal's] claimed interest." If this Court were to proceed without Sears as a party, it would fix the fact of liability under the policies, and the amount of that liability, and while insurers may be responsible for paying that sum initially, this Court would ultimately be fixing the liability of Sears, not a party to this case. A judgment against insurers, where that judgment is ultimately payable by Sears, gives rise to an obligation that is "inconsistent" with the obligation that insurers bargained for, i.e., voluntary repayment by Sears of the sub-deductible claim amount

within 30 days. Insurers' relief would require taking the claim to the bankruptcy court for payment.

**Sears is an indispensable party who cannot be joined; all factors for dismissal are present:** The first of the Eleventh Circuit's two-step approach to analyzing a motion to dismiss for failing to join a required party pursuant to Rule 19 is whether joinder of Sears is feasible, and the answer is "No." Sears is the debtor in Chapter 11 bankruptcy proceedings in the Southern District of New York, case no. 18-23538. The Bankruptcy Court has already exercised jurisdiction over the subject matter of this case, i.e., the lease attached to the Amended Complaint. (*See* Ex. E to Liberty Mutual's Request for Judicial Notice, adopted and incorporated by reference). The bankruptcy court controls the lease obligations of Kmart to Gator Coastal.

The second part of the Eleventh Circuit's analysis is whether harm will accrue to the parties if the joinder is not made. The answer is "Yes." First, complete relief cannot be accorded the parties because the Court cannot fully enforce the deductible provisions of the contract that protect insurers (i.e., the 30-day payback provision); second, Sears will not be able to assert its legal position as to the liability that Gator Coastal asks this Court to affix to insurers, but is really the liability of Sears; and third, fixing that liability on insurers creates a substantial risk that insurers will incur obligations inconsistent with those fixed by their contract with Sears.

**The Lawsuit should not proceed without Sears:** Once a court determines that a party is necessary, but it cannot be joined, the court must then decide whether in equity and good conscience the suit should proceed without the necessary party. Fed. R. Civ. P. 19 (b); *Focus on the Family,* 344 F.3d at 1279-80. To achieve this, the Court balances the following four factors in its analysis: 1.) how prejudicial a judgment would be to the non-joined and joined parties; 2.) whether the prejudice could be lessened depending on the relief fashioned; 3.) whether the judgment without joinder would be adequate; and 4.) whether the plaintiff would have any alternative remedies were the case dismissed for non-joinder. *Shibata v. Lim,* 133 F. Supp. 2d 1311, 1314 (M.D. Fla. 2000).

### i. How prejudicial would a judgment be to the joined and non-joined parties?

A judgment against Defendants, without Sears as a co-defendant, would be prejudicial to both Defendants and Sears. As referenced above, Sears has a duty to reimburse Defendants for the policies' deductible in the event that this Court's judgment requires Defendants to

compensate Plaintiff for the alleged loss. As such, it is in Sears' interest to be able to support in this lawsuit any defenses to the enforceability of the lease or the coverage for the loss under the policy in order to protect its interests.

Moreover, Defendants are plainly prejudiced because they could be subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. Should this Court consider that the subject loss is covered under the policies and award a judgment in favor of Plaintiff, Defendants would have an obligation to indemnify Plaintiff. Should Defendants then attempt to obtain a reimbursement from Sears Holdings for the deductible, Defendants would be compelled to re-litigate any coverage disputes, making Defendants subject to potentially inconsistent results.

### ii. Could the prejudice be lessened depending on the relief fashioned?

As currently plead, the prejudice cannot be lessened. Plaintiff seeks damages based on the contractual relationship between Sears and Defendants. The only way for the prejudice to be lessened is by dismissing the current lawsuit and filing it in the U.S. Bankruptcy Court for the Southern District of New York, naming Sears as a defendant.

### iii. Would judgment without Sears be adequate?

Judgment without Sears would not be adequate. Should Plaintiff prevail in the instant matter, there is no way to ensure that Plaintiff does not also attempt to prevail against Sears in another court, where Sears is a named defendant. Furthermore, should Plaintiff prevail in this lawsuit without Sears, there is no way to ensure that Sears will not file a lawsuit against Defendants regarding a breach of the insurance contracts in a different court. Thus, Plaintiff could theoretically attempt to sue Defendants and Sears in different courts for monies it claims to be owed under the same set of facts. Further, as noted above, any judgment without Sears as a party exposes Defendants to potential double liabilities.

### iv. Does Plaintiff have any alternative remedies were the case to be dismissed for non-joinder of Sears?

Plaintiff does have alternative remedies because it can litigate its claims in the New York Bankruptcy Court, which most likely has jurisdiction anyway. While Defendants cannot predict how or if Plaintiff would choose to proceed after dismissal, the fourth factor of the Rule 19(b) analysis is satisfied in this case because the Plaintiff does have an alternative remedy that would

better protect the interests of all parties, both named and unnamed, if this matter is dismissed for failure to join Sears as an indispensable party.

In sum, Sears is an indispensable party that cannot feasibly be joined to this litigation, and this Court cannot accord complete relief to insurers and otherwise protect Sears' and insurer's interests. Therefore, the action must be dismissed.

**IV.** **Service of process has not been effectuated upon Allied World Assurance Company, Ltd and Hamilton Re, service which must be made pursuant to the Bermuda Arbitration Clause and London Arbitration Clauses found within their respective policies.  To the extent service has been deemed effectuated - which is disputed - Allied World Assurance Company, Ltd. and Hamilton Re seek to compel the arbitration    provisions within their respective policies pursuant to FRCP 12(b)(1).**

Service of process has not been properly effectuated on either Allied World Assurance Company, Ltd or Hamilton Re pursuant to the express terms of those respective policies.  *See,* Exhibits "B", "C", "D" and "E".   As such, the Complaint must be dismissed pursuant to FRCP 12(b)(4).  Moreover, Allied World Assurance Company, Ltd and Hamilton Re expressly reserves their rights to compel arbitration - pursuant to FRCP Rule 12(b)(1) as outlined in their respective policies once service has been effectuated.

Even if the Court deems that service has been effectuated as to certain Defendants, this Court should dismiss all claims as against Allied World Assurance Company, Ltd. and Hamilton Re pursuant to the Federal Arbitration Act ("FAA") wherein Congress has articulated a strong federal policy in favor of enforcing arbitration agreements, and courts liberally favor such agreements.

Assuming *arguendo* that that Plaintiff was added to the Policy as a named insured – which they were not - Plaintiff would be bound by the terms and conditions found within the policies.  The Allied World Assurance Company Ltd. policy contains a Bermuda Arbitration and Choice of Law Clause endorsement, which expressly dictates any and all disputes "relating to the Policy shall be finally and fully determined in Hamilton, Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act 1993…"   (*See*, the Allied World Assurance Company Ltd policy annexed hereto as Exhibit "B" and Exhibit "C".)  The Hamilton Re policy contains a London Arbitration provision which expressly states that any dispute,

31

controversy or claim shall be final and fully determined in London, England under the provisions of the Arbitration Act 1996.   (*See*, the Hamilton Re policy annexed hereto as Exhibit "D" and Exhibit "E".)   The Allied World policy dictates that it be governed by the law of England and Wales (Exhibit "C"), whereas the Hamilton Re policy dictates that New York law governs any arbitration (Exhibit "D").   Both Allied World Assurance Company Ltd. and Hamilton Re maintain that the arbitration agreements in their respective agreements are clear, enforceable and should be enforced as written.  Further, Allied World and Hamilton Re reserve all of their rights in that respect, notwithstanding the arguments made in this motion.

Plaintiff's Amended Complaint alleges that venue is proper due to alleged, albeit unsupported, transactions.   (Doc. 62 at ¶54). Even if accepted as true, none of the alleged transactions can serve to amend, alter or change the contracts of insurance issued by Allied and Hamilton Re.  To the extent there is a dispute arising under those Policies, compliance must be had of the Arbitration provisions within each.  To hold otherwise would effectively serve to write those Arbitrations provisions out of the Policies and re-write the insurance contract on an ex poste facto basis.

Even if service of process was effectuated - which is disputed - the Bermuda and London arbitration clauses warrant dismissal of the action as against Allied World Assurance Company, Ltd. and Hamilton Re.  Pursuant to the Federal Arbitration Act (the "FAA"), "[t]he role of the courts is to rigorously enforce agreements to arbitrate." *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) (internal quotations omitted)). Accordingly, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4). Moreover, courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See, e.g., Shea v. BBVA Compass Bancshares, Inc.*, No. 12-23324, 2013 U.S. Dist. LEXIS 31906, 2013 WL 869526, at *2 n.3 (S.D. Fla. Mar. 7, 2013); *see also, MRI Scan Ctr., LLC v. Nat'l Imaging Assocs.*, 2013 U.S. Dist. LEXIS 66741, 2013 WL 1899689.  If this Court presumes service has

been effectuated as against Allied World Assurance Company Ltd. and Hamilton Re, Courts may nevertheless order arbitration, or some other form of dismissal, immediately, without addressing the issue of personal or subject matter jurisdiction. *See, Ramasamy v. Essar Global Ltd.,* 825 F. Supp. 2d 466, 467 at n.1 (S.D.N.Y. 2011)(relying on *Sinochem Inte'l Co. v. Malaysia Int'l Shipping Copr.*, 549 U.S. 422, 431 (2007), Judge Rakoff stated that "because the Court has determined the case should be dismissed in favor of arbitration, it does not reach defendant's motion to dismiss for lack of personal jurisdiction…"); *Brunham Enters, LLC v. DACC Co.*, Ltd. 2013 U.S. Dist. LEXIS 1964, at *4, n.2 (M.D. Ala Jan. 7, 2013).

As such, notwithstanding all other relief requested, the Complaint should be dismissed as against Allied World Assurance Company, Ltd and Hamilton Re and Plaintiff should be compelled to proceed to arbitration under the policies' respective terms and conditions.

**V.     If this Court finds that it has subject matter jurisdiction, then the Amended Complaint must still be dismissed for improper venue.**

**A.     Legal Standard.**

The standard for deciding a motion to dismiss for improper venue is generally the same as that for deciding a motion to dismiss for lack of personal jurisdiction. *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (citing *Hodgdon Powder Co., Inc. v. Clean Shot Technologies, Inc.,* 92 F.Supp.2d 1170, 1171–72 (D.Kan.2000)).  A court reviewing a rule 12(b)(3) motion to dismiss for improper venue may consider matters outside the pleadings such as affidavit testimony, "particularly when the motion is predicated upon key issues of fact." *Id.* (citation omitted).

**B.     Venue is improper because a bankruptcy proceeding initiated by the indispensable party Sears is pending in another court.**

On October 15, 2018, Sears filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of New York.  *In Re Sears Holdings Corporation, et. al.*, No. 18-23538 (RDD) (S.D.N.Y.) Such a filing, generally stated, gives rise to an automatic stay of proceedings under 11 U.S.C. §362. The automatic stay in the bankruptcy case, if applicable, would bar any action to join Sears to this action, thus requiring dismissal for

failure (and inability) to join an indispensable party. The stay and other essential issues should be resolved in the bankruptcy proceedings. Many such questions are appropriate for that other venue. For example:

- Did an automatic stay arise by operation of law when Sears filed its petition on October 15, 2018;

- Did any inchoate right to policies' proceeds arise in Sears dba Kmart when Hurricane Florence struck South Carolina in September 2018;

- Are those inchoate rights, if any, the property of the Estate and beyond the ability of this Court to adjudicate;

- Did the trustee's rejection of the property lease completely terminate all obligations of the lease, *see, e.g.*, *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1308 (11th Cir. 2007); and

- Can Sears be made a party to this action so that Gator Coastal can recover those proceeds.

Because these issues are properly adjudicated in the bankruptcy proceedings in the Southern District of New York, the court should dismiss the Amended Complaint for improper venue.

**C. In the Alternative, This Case Should be Transferred to the U.S. District of the Northern District of Illinois.**

In the event that this case is not dismissed for the foregoing reasons, Defendants request that this Court transfer venue of this action to the U.S. District Court of the Northern District of Illinois.

"For the convenience of parties, and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). To determine whether transfer is appropriate, the Eleventh Circuit require the Court to weigh the following Section 1404(a) factors: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded plaintiff's choice of forum; and (9)

trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel. V. Convergys Corp.* 430 F. 3d 1132, 1135 n.1 (11th Cir. 2005) citation omitted).

### 1. Convenience of Witnesses

Defendants' policies of insurance were issued to Sears Holding Corporation, parent company to Kmart Corporation. Sears Holding Corporation is located in Illinois and the policies were issued to Illinois. AON issued the subject certificate of insurance to Sears Holding Corporation in Illinois. Unlike Plaintiff, Sears/Kmart were parties to the subject Lease attached to Plaintiff's Amended Complaint and the witnesses that could speak to the parties' intent relative to the duty to procure coverage are all in Illinois.

### 2. Location of Documents

As stated above, all records relative to Defendants' policies are in Illinois along with the witnesses who could speak to the contents of the records on behalf of Sears/Kmart – the actual named insured under Defendants' policies.

### 3. Convenience of Parties

The Plaintiff maintains a principal place of business in Florida.  Sears Holding Corporation is headquartered in Illinois, their Risk Management Group is located in Illinois and the persons with the most knowledge of all leases and insurance matters are in Illinois.

### 4. Locus of Operative Facts

Plaintiff is seeking insurance proceeds from Sears Holding Corporation's policies of insurance. Those contracts and the people with knowledge relative to that contract, as well as the terms of the subject Lease or all in Illinois. The locus of operative facts is certainly not Florida – which appears to have the least amount of contacts with the contracts, the transaction and the loss/damage sustained.

### 5. Availability of Process to Compel Attendance of Unwilling Witnesses

Illinois is suitable to compel attendance of unwilling witnesses.

### 6. Relative Means of Parties

Gator Coastal consists of two individuals, William I. Goldmith and James A. Goldsmith, both of whom are citizens and domiciled in Florida. Sears Holding Corporation is situated in Illinois and likely constrained by the bankruptcy proceeding pending in the Southern District of New York.

6595097.1

**7. Forum's Familiarity with the Governing Law**

The subject Lease dictates that South Carolina law governs the parties' respective obligations thereunder.

**8. Weight Accorded a Plaintiff's Choice of Forum**

Plaintiff's choice of forum receives little deference when "the operative facts underlying the cause of action did not occur within the forum chosen by the plaintiff." *Gould v National Life Ins. Co.,* 990 F. Supp. 1354, 1358 (M.D. Ala. 1998)(quotation omitted); *see, Windmere Corp. v. Remington Productions, Inc.,* 617 F. Supp. 8, 10 (S.D. Fla. 1985)(citations omitted).

Plaintiff's Amended Complaint alleges that the certificate of insurance was issued and delivered in Florida, the implementation and servicing of the Lease was performed in Florida, the instant insurance coverage dispute was the direct result of the Plaintiff's operations in Florida, Plaintiff's "Named Insured" under the Property Insurance Program vested in Florida, the insurance coverage dispute is centered in Florida, and that the Defendants have otherwise transacted business within Florida's Southern District.

The Plaintiff seeks recovery from policies issued to a named insured in Illinois pursuant to a Lease with a South Carolina choice of law provision.

**9. Trial Efficiency and the Interest of Justice**

For purposes of the trial of these proceedings, the witnesses, documents, records, insurance personal and parties to the underlying policies are all in Illinois.

**Conclusion**

**WHEREFORE**, for the reasons set forth herein, ZURICH AMERICAN INSURANCE COMPANY; IRONSHORE SPECIALTY INS. CO.; LIBERTY MUTUAL FIRE INS. CO.; ALLIED WORLD ASSURANCE COMPANY, LTD.; HAMILTON RE, LTD.; ACE'S AMERICAN INSURANCE COMPANY; WESTPORT INSURANCE CORPORATION; ASPEN SPECIALTY INS. CO.; TOKIO MARINE AMERICA INS. CO.; STARR SURPLUS LINES INS. CO.; AIG EUROPE LIMITED; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NUMBER PTNAM1801122; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802912; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICIES NO. PTNAM1802913; UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO

POLICIES    NO.    PTNAM1802914;    UNDERWRITERS    AT    LLOYD'S    LONDON
SUBSCRIBING TO POLICIES NO. BNPD18AA158Z; and UNDERWRITERS AT LLOYD'S
LONDON  SUBSCRIBING  TO  POLICIES  NO.  042768061812  respectfully  request  that  this
Court issue an order dismissing Plaintiff's Amended Complaint for:

    (1) lack of subject matter jurisdiction pursuant to the Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 1332; or alternatively for:

    (2) failure to state a cause of action pursuant to the Federal Rule of Civil Procedure 12(b)(6);

    (3) failure to join an indispensable party pursuant to the Federal Rules of Civil Procedure 12(b)(7) and 19;

    (4) dismissal of the Amended Complaint as against Allied World Assurance Company, Ltd. and Hamilton Re, Ltd. based upon their respective arbitration provisions as contained within their respective Policies.  Alternatively, a request for a stay of proceedings as against Allied World Assurance Company and Hamilton Re, Ltd.[7];

    (5) improper venue; and

    (6) any other remedy this Court deems just and proper.


DATED:  April 29, 2020

Respectfully submitted,

---

[7] Nothing contained herein shall be deemed a waiver of the lack of and improper service objections maintained by Allied World Assurance Company, Ltd. or Hamilton Re, Ltd.  All jurisdictional defenses are expressly reserved.

6595097.1

**CLAUSEN MILLER, P.C.**

 /s/Ramy Elmasri
Ramy Elmasri, Esq.,
Florida Bar No.: 83370
Courtney Murphy, Pro Hac Vice
4830 West Kennedy Blvd., Suite 600
Tampa, Florida  33609
Phone:  312.606.7640
E-service: relmasri@clausen.com;
cmurphy@clausen.com;
mmedder@clausen.com;
anewell@clausen.com.
*Attorneys for Defendants:*
Ace American Insurance Company
Allied World Assurance Company,Ltd.
Syndicate No. 318
Aspen Specialty Insurance Co.
Wesport Insurance Company
Syndicate No. 1414 ASC
Tokio Marine American Insurance Co.
Syndicate No. 5151
AIG Europe Limited
Syndicate No. 1183
Syndicate No. 1955
Syndicate No. 2468
Hamilton Re, Ltd.
Starr Surplus Lines Insurance Company

**LYDECKER | DIAZ**

 /s/ Michelle Diverio
Alejandro Sanchez Parraga, Esq.
Florida Bar No.: 1011105
Michelle Diverio, Esq.
Florida Bar Number: 60392
LYDECKER | DIAZ
1221 Brickell Avenue, 19th Floor
Miami, Florida 33131
Telephone:  (305) 416-3180
Facsimile:  (305) 416-3190
Telephone:  (305) 482-8400
Email:  mmd@lydeckerdiaz.com;
asp@lydeckerdiaz.com.
*Counsel for Defendant,* Zurich American
Insurance Company

**BUTLER WEIHMULLER KATZ CRAIG,
LLP**

 /s/ William R. Lewis
William Roderick Lewis, Esq.
Florida Bar No.: 879827
400 North Ashley Drive Suite 2300
Tampa, FL 33602
Telephone: (813) 594-5143
Facsimile: (813) 281-0900
Email: wlewis@butler.legal
*Counsel for Defendant,* Ironshore Specialty
Insurance Company And Liberty Mutual